**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | | |
|---|---|---|
| CHROMADEX, INC. and TRUSTEES OF DARTMOUTH COLLEGE, | ) ) ) | |
| Plaintiffs, | ) ) | No. 2:21-mc-00010-DCN |
| vs. | ) ) ) | **ORDER** |
| ELYSIUM HEALTH, INC., | ) ) | |
| Defendant. | ) ) | |

The following matter is before the court on defendant Elysium Health Inc.'s ("Elysium") motion to compel, ECF No. 1. For the reasons set forth below, the court grants the motion.

## I. BACKGROUND

This case arises out of patent infringement litigation pending in the District of Delaware. See generally ChromaDex, Inc. & Trs. of Dartmouth Coll. v. Elysium Health, Inc., No. 18-cv-01434 ("the Delaware Litigation"). Trustees of Dartmouth College ("Dartmouth") purports to own certain patents and license them to ChromaDex, Inc. ("ChromaDex") and its affiliate Healthspan Research LLC ("Healthspan"). The asserted patents relate to nicotinamide riboside ("NR"), a form of vitamin B3. ChromaDex and Healthspan sell an NR-containing product called Tru Niagen to consumers in the retail market. In addition to its retail Tru Niagen business, ChromaDex supplies NR to several other companies for inclusion in their products. One of the companies that buys NR from ChromaDex is Thorne Research Inc. ("Thorne"), who then uses that NR in its own products, such as ResveraCel, which it sells in the consumer retail market.

1

Elysium sells a retail product to consumers called BASIS, which also contains NR. ChromaDex and Dartmouth filed suit against Elysium for patent infringement in connection with its BASIS product in the Delaware Litigation. As part of its discovery efforts in the Delaware Litigation, Elysium served Thorne with a subpoena to produce documents (the "Subpoena") on December 2, 2020. The Subpoena seeks documents and a deposition concerning the identity, characteristics, and sales data for the NR products that Thorne has sold. Thorne objected and refused to provide any of the documents and information requested in the Subpoena and likewise refused to produce a deponent.

On January 8, 2021, Elysium filed a motion to compel Thorne to respond to its discovery requests with this court. ECF No. 1.[1] On January 27, 2021, Thorne responded, ECF No. 11, and, on February 3, 2021, Elysium replied, ECF No. 13. The court held a telephonic hearing on the motion on February 9, 2021. ECF No. 14. As such, this motion has been fully briefed and is now ripe for review.

## II.  STANDARD

A party to litigation may issue a subpoena for the production of discoverable material to a non-party to the litigation. Fed. R. Civ. P. 45. "The scope of discovery for a nonparty litigant under a subpoena duces tecum issued pursuant to Rule 45 is the same as the scope of a discovery request made upon a party to the action under Rule 26."

---

[1] The instant motion is properly before the court because "both Rule 37 and Rule 45 require that when a party seeks to compel a non-party's action pursuant to a subpoena duces tecum, the party must file its motion to compel in the district where the sought documents are located, not in the district where the subpoena was issued." Koenig v. Johnson, 2020 WL 635772, at *2 (D.S.C. Feb. 11, 2020). Thorne is located in Summerville, South Carolina, and the Subpoena requests production of documents and a deposition in Charleston, SC. Thorne does not argue that this court lacks jurisdiction over this motion, and the court is satisfied that it does.

2

Alston v. DIRECTV, Inc., 2017 WL 1665418, at *2 (D.S.C. May 3, 2017). In other words, the scope of discovery allowed under a Rule 45 subpoena is equivalent to the scope of discovery allowed under Rule 26. HDSherer LLC v. Nat'l Molecular Testing Corp., 292 F.R.D. 305, 308 (D.S.C. 2013).

"The scope of discovery permitted by Rule 26 is designed to provide a party with information reasonably necessary to afford a fair opportunity to develop its case." Mach. Sols., Inc. v. Doosan Infracore Am. Corp., 323 F.R.D. 522, 526 (D.S.C. 2018). Parties are permitted to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "Information sought is relevant if it 'bears on [or] reasonably could lead to another matter that could bear on, any issue that is in or may be in the case.'" Ferira v. State Farm Fire & Cas. Co., 2018 WL 3032554, at *1 (D.S.C. June 18, 2018) (quoting Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978)). "[I]t is well understood that pursuant to Rule 26(b)(1) relevancy is construed very liberally." Nat'l Credit Union Admin. v. First Union Capital Markets Corp., 189 F.R.D. 158, 161 (D. Md. 1999). In determining proportionality, a court should consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). "The scope and conduct of discovery are within the sound discretion of the district court." Columbus-Am. Discovery Grp. v. Atl. Mut. Ins. Co., 56 F.3d 556, 568 n.16 (4th Cir. 1995) (citing Erdmann v. Preferred Research, Inc. of Ga., 852 F.2d 788, 792 (4th Cir. 1988)). As such, whether to grant or deny a motion to

compel is generally left within the district court's "substantial discretion in managing discovery." Lone Star Steakhouse & Saloon, Inc. v. Alpha Va., Inc., 43 F.3d 922, 929 (4th Cir. 1995).

### III. DISCUSSION

The Subpoena generally requests that Thorne provide information and documents concerning the identity of each product that Thorne has sold or offered for sale that contains NR and was supplied by ChromaDex; the names, ingredients, sizes, capsules per bottle, servings per bottle, serving sizes, and NR content per serving for the products sold or offered for sale; and quarterly unit sales, revenues, list pricing, and average sales pricing. Thorne objects to the Subpoena in its entirety on five grounds. First, Thorne argues that Elysium's motion to compel is untimely. Second, Thorne argues that Elysium "has not established that is has exhausted party discovery and discovery of public information before burdening third party Thorne." ECF No. 11 at 5. Third, Thorne argues that the requested information "is not necessary to support any arguments about non-infringing alternatives." ECF No. 11 at 6. Fourth, Thorne argues that the timeframe of the discovery requests should be limited. And fifth, Thorne argues that Elysium's request "demand[s] sensitive financial information without providing adequate protection." ECF No. 11 at 8. The court addresses each argument in turn.

#### A. Timeliness

First, Thorne argues that the motion was untimely filed under Local Civil Rule 37.01 (D.S.C.). That rule provides,

> Motions to compel discovery must be filed <u>within twenty-one (21) days after receipt of the discovery response</u> to which the motion to compel is directed or, where no response has been received, within twenty-one (21) days after the response was due.

4

(emphasis added).  Counsel for Thorne sent Elysium an email with Thorne's objections to the Subpoena on December 14, 2020.  Thorne also mailed its objections to Elysium on December 15, 2020, which Elysium maintains it received on December 21, 2020.  Elysium then filed its motion to compel on January 8, 2021.  Thorne argues that because the motion was filed 25 days after it sent its objections via email, the motion to compel is four days late under Local Civil Rule 37.01, and the court should deny Elysium's motion as untimely.  Alternatively, Thorne argues that if its email did not trigger the 21-day clock, then the clock was triggered on the date Thorne mailed its objections because service by mail "is complete upon mailing" under Fed. R. Civ. P. 5(b)(2)(C).  In this scenario, Thorne argues that the motion was at least three days late.

Elysium argues that its motion was timely filed because it was filed only 18 days after <u>receiving</u> Thorne's objections in the mail.  Elysium argues that the 21 days under Local Civil Rule 37.01 did not start upon receipt of Thorne's email because, under Federal Rule of Civil Procedure 5(b)(2)(E), "[s]ervice by email is not effective service unless the person served 'consented . . . in writing' to electronic service."  ECF No. 13 at 2.  Elysium maintains no such consent was given.

The court agrees with Elysium that the motion is timely.  Whether receipt of objections to a subpoena by email triggers the 21-day deadline under Local Civil Rule 37.01 appears to be a matter of first impression in this district.  Federal Rule of Civil Procedure 45 explains how parties who have been served with subpoenas may object to the same:

> A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored

>  information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served.

Fed. R. Civ. P. 45(d)(2)(B). It is clear under Rule 45 that objections must be "served" on the party designated in the subpoena. As such, service of objections to a Rule 45 subpoena must comply with Federal Rule of Civil Procedure 5, which applies to "a discovery paper <u>required to be served</u> on a party." Fed. R. Civ. P. 5 (a)(1)(C) (emphasis added).[2] Under Rule 5, objections may only be served via email if the party consented to service in this manner. Thorne does not assert that Elysium agreed to service of Thorne's discovery responses by email, and Elysium asserts that it did not so agree. As such, Thorne's email on December 14, 2020 did not constitute service of the objections. Instead, Thorne properly served its objections by mail on December 15, 2020, and Elysium received those objections on December 21, 2020. The purpose of Rule 5 is to ensure that certain significant documents are served in a manner reasonably designed to provide notice to an opposing party, such that it has an opportunity to be heard on the matter addressed in those documents. It would make little sense to require service of a document in a manner that complies with Rule 5, yet start the clock for a party's time to respond to that document on the basis of a communication does not comply with Rule 5. As such, the court will not consider Elysium to have "received" Thorne's objections on the date it received the objections by email. Rather, the court will only look to the date Elysium received the objections in the manner contemplated by Rule 5. Additionally, while the court understands Thorne's argument that service by mail was effectuated upon

---

[2] Indeed, the parties do not dispute that Rule 5 applies to service of the Subpoena and corresponding objections.

mailing on December 15, 2020, Local Rule 37.01 specifically states that the deadline is 21 days after "receipt" of the objections, not 21-days after service of the objections. Thus, the clock started on only when Elysium received the objects by mail on December 21, 2020, meaning the instant motion to compel is timely.[3]

### B. Exhaustion of Party Discovery and Publicly Available Resources

Second, Thorne argues that Elysium must exhaust party discovery and publicly available resources before it can subpoena Elysium for information. However, Thorne cites no case law or other authority to support its assertion, and the court likewise finds none. See Attorneys Liability Protection Society, Inc. v. Wooddy, 2013 WL 11328456, at *4 (D.S.C. Oct. 1, 2013) (finding that defendants were required to produce documents relating to prior lawsuit that were within their possession, custody, and control even though they were publicly filed); see also Susko v. City of Weirton, 2010 WL 1881933, at *2 (N.D.W. Va. May 7, 2010) ("The fact that the information sought is equally available to the interrogator, or is a matter of public record, does not render the interrogatories objectionable."). As Elysium points out, the Subpoena only requests "[d]ocuments or information sufficient to" identify Thorne's NR products and the requested details regarding these products; Elysium does not request every document Thorne possesses relating to this information. ECF No. 1-3. To the extent Thorne claims

---

[3] Even if the court were to find the motion untimely, the court would find that Elysium's delay constituted "excusable neglect" under Rule 6(b), which provides that "[w]hen an act may or must be done within a specified time, the court may, for good cause, extend the time . . . on motion made after the time has expired if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b). Based on the above analysis, Elysium acted reasonably by relying on the date it received the objections by mail in determining the deadline under Local Rule 37.01 such that any failure to timely respond would amount to excusable neglect.

7

the requested information is available on Thorne's website, Thorne, with little burden, can so direct Elysium in a discovery response certifying the accuracy of that information. Additionally, the court fails to see how ChromaDex is a more appropriate party to request discovery relating to Thorne's NR products and associated sales information. While ChromaDex has information about the NR it sold to Thorne, Thorne has far more insight than ChromaDex into Thorne's own subsequent incorporation of that NR into its product and its own sale of that product. Thus, the court overrules Thorne's objections in this regard.

### C. Relevance

Thorne next argues that Elysium fails to explain how all the details it seeks are relevant to the Delaware Litigation. Elysium claims that the information requested in the Subpoena—including the identity of the NR-containing products that Thorne has sold or offered for sale; the requested details about those products; and the quantity sold, revenues, list price, and average unit sales price—is relevant to the question of damages. To orient its analysis, the court briefly summarizes the applicable law regarding damages in a patent infringement case. The court then addresses the parties' arguments regarding the relevance of the requested information to the issue of damages.

Upon proof of infringement, 35 U.S.C. § 284 provides that "the court shall award [the patent owner] damages adequate to compensate for the infringement but in no event less than a reasonable royalty for the use made of the invention by the infringer." The phrase "damages adequate to compensate" means "full compensation for 'any damages' [the patent owner] suffered as a result of the infringement." General Motors Corp. v. Devex Corp., 461 U.S. 648, 654 (1983). The appropriate measure of compensatory

damages may be determined by one of three methods: (1) lost profits; (2) an established royalty; or (3) a reasonable royalty. Chisum, 5 Patents § 20.03 at 20–77. Lost profits and established royalties are methods of assessing the actual damages suffered by the patentee. Trell v. Marlee Elec. Corp., 912 F.2d 1443, 1445 (Fed. Cir. 1990). A reasonable royalty, on the other hand, is a measure of recovery "intended to provide a just recovery to persons who for evidentiary or other reasons cannot prove lost profits or an established royalty." Hayhurst v. Rosen, 1992 WL 123178, at *13 (E.D.N.Y. 1992); Chisum, 5 Patents § 20.02[3] at 20–159.

   Full compensation as contemplated by § 284 includes any foreseeable lost profits the patent owner or licensor can prove. See Rite-Hite Corp. v. Kelley Co., 56 F.3d 1538, 1545–47 (Fed. Cir. 1995). To recover lost profits, a plaintiff must show "causation in fact," establishing that "but for" the infringement, he would have made additional profits. See King Instruments Corp. v. Perego, 65 F.3d 941, 952 (Fed. Cir. 1995). Such a showing requires the plaintiff to "reconstruct the market to determine what profits the patent [owner] would have made had the market developed absent the infringing product." Ericsson, Inc. v. Harris Corp., 352 F.3d 1369, 1377 (Fed. Cir. 2003). Within this framework, courts consistently permit plaintiffs to present market reconstruction theories showing all of the ways in which they would have been better off in the "but for world," and accordingly to recover lost profits in a wide variety of forms. Grain Processing Corp. v. Am. Maize-Prod. Co., 185 F.3d 1341, 1350 (Fed. Cir. 1999). However, a fair and accurate reconstruction of the "but for" market must also take into account alternative actions the infringer foreseeably would have undertaken had he not infringed. Id. at 1350–51. Without the infringing product, a rational would-be infringer

9

is likely to offer an acceptable noninfringing alternative, if available, to compete with the patented product rather than leave the market altogether. In other words, the competitor in the "but for" marketplace is hardly likely to surrender its complete market share when faced with a patent, if it can compete in some other lawful manner. Id.

To the extent a plaintiff cannot prove lost profits or an established royalty rate, it may also calculate damages according to a reasonable royalty. "A reasonable royalty is the amount that 'a person, desiring to manufacture [, use, or] sell a patented article, as a business proposition, would be willing to pay as a royalty and yet be able to make[, use, or] sell the patented article, in the market, at a reasonable profit.'" Trans–World Mfg. Corp. v. Al Nyman & Sons, Inc., 750 F.2d 1552, 1568 (Fed. Cir. 1984) (citations omitted). A "reasonable royalty" derives from a hypothetical negotiation between the patentee and the infringer. See, e.g., Unisplay, S.A. v. American Elec. Sign Co., 69 F.3d 512, 517 (Fed. Cir. 1995). "The hypothetical negotiation seeks to determine the terms of the license agreement the parties would have reached had they negotiated at arm's length when infringement began." Id. A comprehensive list of relevant factors for a reasonable royalty calculation appears in Georgia–Pacific Corp. v. United States Plywood Corp., 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970). A few of these factors include "[t]he nature and scope of the license, as exclusive or non-exclusive"; "[t]he commercial relationship between the licensor and licensee, such as, whether they are competitors"; "[t]he established profitability of the product made under the patent; its commercial success; and its current popularity"; "[t]he portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements"; and the "established

policy and marketing program to maintain [the owner or licensor's] patent monopoly." Id. With this law firmly in mind, the court turns to the parties' relevancy arguments.

The parties agree that ChromaDex may be entitled to lost profits damages and Dartmouth may be entitled to a reasonable royalty if Elysium is found to have infringed on the NR patent. Elysium maintains that the information it requests bears directly on the calculation of these damages. Thorne, conversely, argues that information requested in the Subpoena "is not necessary" to support any argument regarding damages. ECF No. 11 at 6. Thorne maintains that the only information Elysium may need is Thorne's overall revenue and unit sales on an annual basis during the relevant time period. The court agrees with Elysium.

To begin, "the party resisting a discovery request bears the burden of persuading the court that the requested information is outside the scope of discovery." Mach. Sols., Inc. v. Doosan Infracore Am. Corp., 323 F.R.D. 522, 529 (D.S.C. 2018) (citing Ashmore v. Williams, 2017 WL 2437082, at *4 (D.S.C. June 6, 2017)). As such, Thorne, not Elysium, bears the burden of persuasion in this motion. Moreover, the scope of discovery is not limited to "necessary" information as Thorne appears to argue; it extends to "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Accordingly, the court finds Elysium's requests relevant to the question of damages for both ChromaDex and Dartmouth. The information Elysium requests relates to either Thorne's sales data for its NR-containing products or details regarding those products that could affect consumer demand, such as servings per bottle and ingredients. This information is relevant to ChromaDex's lost profits calculation, namely in "reconstruct[ing] the market" to

11

determine the profits ChromaDex would have realized "but for" Elysium's alleged infringement. Ericsson, 352 F.3d at 1377. In other words, the requested information speaks to how many of Elysium's sales would have been made by Thorne, and not ChromaDex, had Elysium's NR-containing product BASIS not been on the market. The requested information is also relevant to calculating Dartmouth's reasonable royalty damages, if any. The size of Thorne's market share and other details of its competing products affect how much Elysium would hypothetically have paid as a reasonable royalty for a license to the patents. The information regarding Thorne's NR products specifically bear on the court's consideration of the Georgia-Pacific factors, including "[t]he established profitability of the product made under the patent; its commercial success; and its current popularity" and "[t]he portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements." 318 F. Supp. at 1120. As such, the court finds Elysium's requests relevant to the Delaware Litigation.[4]

### D. Timeframe

As a fourth objection, Thorne argues that Elysium's request is not properly limited in time. Specifically, Thorne argues that Elysium is not entitled to information on products sold or offered for sale after March 2017. Thorne explains that the court in the Delaware Litigation found that ChromaDex lacks standing to assert infringement for

---

[4] Thorne also argues that, because ChromaDex bears the burden of proving lost profits, Elysium does not need this information. The court disagrees. Just because ChromaDex bears the burden of proof, it does not follow that Elysium is not entitled to discovery in its defense. As discussed above, Elysium is entitled to discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). This is true regardless of who ultimately bears the burden of proof on that claim or defense. Thus, Thorne's argument fails in this regard.

conduct after March 2017, meaning that Elysium does not face any potential infringement damages after that date. Elysium, in turn, argues that the issue of ChromaDex's post-March 2017 standing remains open because ChromaDex has filed a motion for reconsideration. Elysium also asserts that, even if the motion for reconsideration fails, the information requested in the subpoena is still relevant to Dartmouth's request for reasonable royalty damages.

The complaint in the Delaware Litigation alleges that Elysium's infringement began on or around July 2017. As such, during the hearing, Elysium agreed to limit the time period of its request to the years 2017 to present. The court is unpersuaded by Thorne's argument that the court should not compel discovery after March 2017. Even if the court in the Delaware Litigation found that ChromaDex lacks standing to claim damages after March 2017, Thorne does not argue that Dartmouth lacks standing for infringement claims after that date. As such, information requested in the Subpoena dated after March 2017 is still relevant to Dartmouth's claims for a reasonable royalty for patent infringement. Although the relevant date for calculating Dartmouth's reasonable royalty is the date of Elysium's first alleged infringement—on or around July 2017, courts are permitted to consider information after the infringement began in its calculation. As the Federal Circuit has explained,

> The [reasonable royalty] methodology encompasses fantasy and flexibility; fantasy because it requires [the jury] to imagine what warring parties would have agreed to as willing negotiators; flexibility because it speaks of negotiations as of the time infringement began, <u>yet permits and often requires [the jury] to look to events and facts that occurred thereafter and that could not have been known to or predicted by the hypothesized negotiators</u>.

13

Fromson v. W. Litho Plate & Supply Co., 853 F.2d 1568, 1575 (Fed. Cir. 1988) (emphasis added), overruled on other grounds by Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp., 383 F.3d 1337 (Fed. Cir. 2004) (en banc).  Because the court may consider Thorne's sales information after July 2017 in calculating a reasonable royalty, the court compels Thorne to respond to Elysium's discovery request for the time period of January 2017 to December 2020.[5]

### E. Confidentiality

Fifth and finally, Thorne asserts that it "require[s] additional protections for its confidential information beyond those provided in the Protective Order," including the ability to limit review of certain financial information to "outside counsel only" and prohibit review by in-house Elysium employees.  ECF No. 11 at 8.

During the hearing, Elysium agreed to prohibit in-house counsel review of any documents Thorne marked confidential.  The court agrees that limiting review of certain materials to outside counsel only strikes a fair balance between Elysium's need for the information and Thorne's concern of misuse of the information by competitors.  Such a limitation has often by employed by parties and upheld by courts to protect confidential

---

[5] Thorne also argues that it already provided Elysium with sales data for its NR product sales from February 1, 2016 to February 28, 2017 in connection with breach of contract action in California, ChromaDex, Inc. v. Elysium Health, Inc., No. 8:16-cv-02277-CJC-DFM (C.D. Cal. filed Dec. 29, 2016) (the "California Litigation").  As such, Thorne argues that Elysium has "no basis to burden Thorne a second time" by requesting production of these materials.  ECF No. 11 at 8.  The court is unmoved by Thorne's assertion that it already provided Elysium certain NR product sales data from February 1, 2016 to February 28, 2017 in the California Litigation.  As Elysium points out, even if Thorne has already fully responded to Elysium's request in the California litigation, Elysium is at the very least entitled to a signed and certified discovery response under Federal Rule of Civil Procedure 26(g)(1) that confirms that no additional responsive materials exist.

commercial information.  See, e.g., Drexel Heritage Furnishings, Inc. v. Furniture USA, Inc., 200 F.R.D. 255, 262 (M.D.N.C. 2001); Irwin Indus. Tool Co. v. Worthington Cylinders Wisconsin, LLC, 2009 WL 606190, at *2 (W.D.N.C. Mar. 9, 2009); Brown Bag Software v. Symantec Corp., 960 F.2d 1465, 1471 (9th Cir. 1992); Norbrook Labs., Ltd. v. G.C. Hanford Mfg. Co.,  2003 WL 1956214, at *5 (N.D.N.Y. Apr. 24, 2003).  As such, the court orders that any documents marked "For Outside Counsel Only" by Thorne may only be reviewed by Elysium's outside counsel.  To the extent further disclosure of these confidential documents becomes necessary in the course of the Delaware Litigation, including disclosure to ChromaDex or Dartmouth, the parties must apply to the court for an order so permitting.

## IV.   CONCLUSION

For the reasons set forth above, the court **GRANTS** the motion to compel, subject to the aforementioned timeframe and confidentiality limitations.

**AND IT IS SO ORDERED.**

  **DAVID C. NORTON**
  **UNITED STATES DISTRICT JUDGE**

**March 8, 2021**
**Charleston, South Carolina**